The **TIMBERLAND COMPANY,**
Plaintiff/Counter-defendant,

v.

Nelson **SANCHEZ, et al.,**
Defendants/Counter-plaintiffs.

Civ. A. No. 89–2975.

United States District Court,
District of Columbia.

Feb. 7, 1990.

David R. Busam, Washington, D.C., for plaintiff/counter-defendant.

Christopher G. Hoge, Washington, D.C., for defendants/counter-plaintiffs.

MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

This matter is before the Court on plaintiff/counter-defendant's, the Timberland Company, ("Timberland") Motion For Preliminary Injunction. Timberland moves for the entry of a preliminary injunction, enjoining the defendants/counter-plaintiffs Nelson Sanchez ("Sanchez"), Tippy's Shoes, Co. ("Tippys") and/or Export International

Cx.A ("Export")[1] from proceeding with two certain lawsuits filed on November 24 and December 1, 1989, in the Dominican Republic, against Timberland and its subsidiaries, Recreational Footwear Company and Outdoor Footwear Company pending resolution of the instant action.

## I.

The facts regarding the procedural history in this case are not in dispute. On October 27, 1989, Timberland filed an action in this Court against Sanchez and Co. Sanchez and Co.'s answer and/or counterclaim was due to be filed on November 17, 1989. *See* Fed.R.Civ.P. 12(a). The parties agreed that the due date for filing the answer and/or counterclaim would be extended to November 30, 1989. On November 24, 1989, Sanchez and Export filed a complaint against the Timberland Company and its subsidiaries, Recreational Footwear and the Outdoor Footwear Company, in the Dominican Republic. On November 30, 1989, Sanchez and Co. filed their answer and counterclaim against Timberland. On December 1, 1989, Sanchez filed another action against Timberland.

Timberland submits that the matters raised in both actions in the Dominican Republic are in the nature of compulsory counterclaims to the complaint filed against Sanchez and Co. in this Court; therefore, Sanchez and Co. are barred from raising them in another court. Particularly, Timberland submits that the November 24 action concerns the same issues raised in Count III of the defendants' counterclaim filed on November 30, 1989. Sanchez and Co. accept Timberland's contention that the subject matter of the counterclaim in this Court and of the November 24 Dominican Republic lawsuit is the same. Sanchez and Co.'s Memorandum In Opposition to Motion for Preliminary Injunction ("Sanchez and Co.'s Opposition") at 2.[2] With respect to the December 1, 1989, Dominican Republic suit, Sanchez and Co. contend that the suit

raises different legal rights and different remedies.

## II.

Federal Rule of Civil Procedure 13(a) states in pertinent part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action ...

Rule 13 bars a party from asserting a compulsory counterclaim in a second action. *See Southern Construction Co. v. Pickard*, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962). Further, "it is well settled that in order to enforce this bar, a federal court may enjoin a party from bringing its compulsory counterclaim in a subsequent federal court action." *Seattle Totem Hockey Team, Inc. v. National Hockey League*, 652 F.2d 852, 855 (9th Cir.1981) (citations omitted).

The Court recognizes that its discretion to enjoin parties includes proceedings in a foreign country, but the power should be used sparingly. *Id.* Sanchez and Co., relying on *Canadian Filters Ltd. v. Lear-Sigler Inc.*, 412 F.2d 577 (1st Cir.1969), urge the Court to exercise "self imposed reluctance in this case." In *Canadian Filters Ltd.*, the court noted that "[t]he issue is not one of jurisdiction, but one, almost as important when a foreign sovereign is involved, of comity ...; therefore, the district court's action on the jurisdiction of a foreign sovereign requires that such action be taken only with care and great restraint." *Id.* at 578. However, the court also pointed out that:

---

**1.** Reference to the defendants/counter-plaintiffs is hereafter "Sanchez and Co.".

**2.** Sanchez and Co.'s Opposition is not numbered, the page reference is to the page that follows in numerical sequence.

Doubtless there are times when comity, a blend of courtesy and expedience, must give way, for example when the forum seeks to enforce its own substantial interest, or in limited circumstances when relitigation would cover exactly the same points.

*Id.* at 578–579.

### III.

■ Sanchez and Co. do not dispute Timberland's contention that the breach of contract claim, raised in the Dominican Republic November 24 suit, constitutes a compulsory counterclaim. Sanchez and Co.'s Opposition at 3. Moreover, they submit that is why they asserted it in count III of their counterclaim filed on November 30, 1989. *Id.* However, they assert that by the time the counterclaim was filed, the complaint in the Dominican Republic had already been filed. *Id.*

Timberland argues that:

[a] finding that the jurisdiction of this Court is triggered only by the filing date of a counterclaim, particularly when the Court already has jurisdiction over the parties, would not only run *contra* to the holding in *Seattle Totems*, it would be most inequitable in this case.

Timberland's Reply at 6. The Court must agree. The answer and counterclaim were due to be filed in this action on November 17, 1989. But for the agreement by the parties, the counterclaim would have been filed before November 24, 1989, the date of the filing of the Dominican Republic proceeding. Further, to allow the actual filing date of the counterclaim to be controlling, would encourage parties to run to the other jurisdiction before filing a counterclaim, thereby defeating the Rule 13 bar.

The Court concludes that the exception to the Rule 13 bar that obviates the need to file a compulsory counterclaim if "at the time the action was commenced the claim was the subject of another pending action" does not apply in this case. The drafters of the Federal Rules clearly anticipated the possibility of a party attempting to avoid the Rule 13 bar by filing a complaint in another jurisdiction before filing an answer and/or counterclaim.[3]

With respect to the November 24, 1989 Dominican Republic suit, the Court concludes that Sanchez and Co. should be enjoined from proceeding in the Dominican Republic. Since the November 24 Dominican Republic suit is the basis of a compulsory counterclaim in this Court, the Court has substantial interest to enforce. *See Canadian Filters Ltd. v. Lear–Sigler Inc.*, *supra*. Further, relitigation would cover exactly the same points. *Id.*

### IV.

Sanchez and Co. contend that the cause of action asserted in their December 1, 1989 lawsuit filed in the Dominican Republic raises different legal issues and seeks vindication of different legal rights than those raised in the compulsory counterclaim, and so may not be enjoined under the applicable legal standard. Sanchez and Co.'s Opposition at 5. However, the question before this Court is whether or not the "claim … arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *See* Fed.R.Civ.P. 13(a). The purpose of the rule is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 625 (1975) (citing *Southern Construction Co. v. Pickard*,

---

**3.** Fed.R.Civ.P. 13(a) advisory committee's note: "The removal of the phrase 'not the subject of a pending action' and the addition of the new clause at the end of the subdivision is designed to eliminate the ambiguity noted in *Prudential Insurance Co. of America v. Saxe*, App.D.C. 1943, 77 U.S.App.D.C. 144, 134 F.2d 16, 33–34, cert. den., 1943, 319 U.S. 745, 63 S.Ct. 1033. The rewording of the subdivision in this respect insures against an undesirable possibility presented under the original rule whereby a party having a claim which would be the subject of a compulsory counterclaim could avoid stating it as such by bringing an independent action in another court after the commencement of the federal action but before serving his pleading in the federal action."

371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962)).

The Supreme Court has noted:

"Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending · not so much upon the immediateness of their connection as upon their logical relationship ... Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations ... does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim.

*Columbia Plaza Corp. v. Security National Bank,* 525 F.2d 620, 625 (1975) (citing *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926)). Sanchez and Co. contend that December 1 "suit involves a complaint filed by [Timberland] in the courts of the Dominican Republic, in which it was alleged that defendant Sanchez had wrongfully removed materials from a factory in the Dominican Republic." Sanchez and Co.'s Opposition at 6.[4]

■ Notwithstanding, Sanchez and Co.'s contention that the December 1 suit is a "false accusation", which may raise different legal issues, it is clear that whether or not there is a basis for the accusation of wrongful removal "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Timberland's claims is that Sanchez and Co. attempted or threatened to sell, without authorization, certain handsewn leather uppers belonging to Timberland and misappropriated certain equipment belonging to Timberland. *See* Complaint filed October 27, 1989. Accordingly, the Court concludes that the December 1, 1989 Dominican Re-

public suit is . a compulsory counterclaim that must be raised in this proceeding.

■ The parties agree that this Court may enjoin proceedings in a foreign court where the foreign litigation would (1) frustrate a policy of the forum court; (2) be vexatious or oppressive; (3) threaten in rem or quasi in rem jurisdiction; or (4) prejudice other equitable consideration. *In re Unterweser Reederei, Gmbh,* 428 F.2d 888 (5th Cir.1970). The Court note earlier, the purpose behind Rule 13(a). To allow the Sanchez and Co. to litigate a compulsory counterclaim in the Dominican Republic would defeat the concerns behind Rule 13(a) and lead to unnecessary duplicative litigation. Accordingly, the Court concludes that Sanchez and Co. should be enjoined from proceeding in the Dominican Republic on the December 1, 1989 suit.

## V.

In order to be entitled to injunctive relief, a movant must demonstrate (1) that it has a strong likelihood of success on the merits, (2) that it will suffer irreparable injury if injunctive relief is denied, (3) that other interested parties will not suffer substantial harm if injunctive relief is granted, and (4) that the public interest favors the granting of injunctive relief or, at least, that the granting of injunctive relief is not adverse to the public interest. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (1977). In addition, "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors." *Id.*

For the reasons discussed above, the Court concludes that Timberland has shown a strong likelihood of success on the merits. In addition, Timberland can suffer irreparably harm by having to litigate similar claims in two different jurisdiction. Further, the issuance of the injunction will not substantially harm other interested parties. Particularly, Sanchez and Co.'s claims can proceed in this Court. Finally,

---

**4.** Timberland's complaint for breach of trust was dismissed in the Dominican Republic when the uppers and equipment were returned. Tim-

berland's Memorandum in Support of Its Motion for Preliminary Injunction at 4ƒ n. 2.

**386**

in view of the purpose of Rule 13(a), as discussed above, public interest favors injunction.

For the reasons discussed above, the Court concludes that Timberland's motion for a preliminary injunction should be granted. It is hereby

ORDERED that Timberland's motion for a preliminary injunction is granted, it is further

ORDERED that defendants/counterplaintiffs Nelson Sanchez, Tippy's Shoes, Co. and/or Export International Cx.A are enjoined from proceeding with the two lawsuits filed on November 24 and December 1, 1989 in the Dominican Republic, against plaintiff, the Timberland Company and its subsidiaries, Recreational Footwear Company and Outdoor Footwear Company, pending resolution of the instant action, it is further

ORDERED that, as a condition, Timberland shall post a $10,000 bond as surety.